Lomax *et al. v.* White.

No. 9551.

## LOMAX ET AL. *v.* WHITE.

PROMISSORY NOTE.—*Endorsement in Blank.*—*Contract of Endorser.*—The endorsement or assignment of a promissory note may be in blank and need not disclose the name of the endorsee or assignee; and in such case the contract of the endorser or assignor will inure to the benefit of the *bona fide* holder for value of the note, although his name do not appear in such contract.

SAME.—*Waiver of Due Diligence.*—*Construction of Contract.*—Where the endorsers of a note state in writing, as a part of their endorsement, that they "*will stand good six months*" from the date of such endorsement, they thereby agree with the endorsee or *bona fide* holder of such note, that he need not use due diligence against the maker of the note for six months, as without such diligence, during that time, they will stand good for the amount of the note.

From the Grant Circuit Court.

*I. VanDevanter* and *J. W. Lacey,* for appellants.

*A. Steele* and *R. T. St. John,* for appellee.

HOWK, J.—In this action the appellee sued the appellants in a complaint of a single paragraph, wherein he alleged in substance, that on the 16th day of November, 1874, one Henry Creviston, since deceased, executed and delivered to the appellants, by the name and style of William and Constantine Lomax, a promissory note for the sum of $74.50, with interest at ten per cent. per annum from date; that afterwards, on the 18th day of March, 1876, the appellants, by their agent, Edward D. Winchell, for a valuable consideration, sold and delivered the said note to the appellee, and guaranteed the same to be good and solvent, and to stand good for the same for six months from said date of the 18th day of March, 1876, which said guaranty and agreement were written on the back of said note and signed by said agent by the name and style of E. D. Winchell; that the said Winchell was authorized and empowered to make such sale and such guaranty; that the said Henry Creviston was at the time a resident of Grant county, Indiana, and within ten days from the date of the en-

dorsement on said note was taken ill, and within a few days. thereafter died; that his estate was wholly insolvent and unable to pay the preferred debts and existing liens on the same, and when the same was settled there remained nothing for the general creditors; that the appellee filed said note against the said estate, and it was duly allowed by the administrator thereof, but that appellee realized nothing from the same, and had never received any sum thereon from any source. Wherefore, etc.

The appellants' demurrer to the complaint, for the alleged insufficiency of the facts therein to constitute a cause of action, having been overruled by the court, and their exception saved to this ruling, they answered by a general denial of the complaint. The issues joined were tried by the court, and a finding was made for the appellee in the sum of $127.68, and over the appellants' motion for a new trial, and exception saved, the court rendered judgment against them in appellee's favor on its finding.

In this court the appellants have assigned as errors the following decisions of the circuit court: 1. In overruling their demurrer to the complaint; and, 2. In overruling their motion for a new trial.

1. Creviston's note was an ordinary promissory note, not payable at a bank in this State, and, therefore, not negotiable as an inland bill of exchange. It was dated November 16th, 1874, and was payable one day after date to the order of the appellants. Long after the maturity of the note the appellants sold and transferred it to the appellee, for a valuable consideration, and endorsed the same in the words and figures following, to wit:

"W. and C. Lomax will stand good six months from this date, March 18th, 1876." (Signed) "Per E. D. WINCHELL."

The first point made by the appellants' counsel in discussing the alleged insufficiency of the complaint is, that the contract of the appellants, evidenced by their endorsement of the note, is absolutely void for uncertainty, in this: "It does not, in

any manner, disclose the obligee in the contract." This point, it seems to us, is not well taken. It is not necessary that the contract of an endorser or assignor of a promissory note should disclose the name of the endorsee or assignee thereof. The assignment or endorsement of a promissory note may be, and often is, executed in blank; and, in such case, the contract of the endorser or assignor, evidenced thereby, will inure to the benefit of the *bona fide* holder for value of such note, although his name be not disclosed in such contract.

It is further insisted by the appellants that their contract, evidenced by their endorsement of the note, is void for uncertainty, in this: " It does not show what is contracted to be done." Appellants' counsel say: " The contract is that ' W. and C. Lomax will stand good,' but it is impossible to ascertain from the contract what they are to stand good for. The fact that the contract is endorsed upon the note does not aid it, since there is no reference in the contract to the note. It is no better than if it had been endorsed upon a separate piece of paper." In support of their position, counsel have cited only the case of *Ridgway* v. *Ingram*, 50 Ind. 145 (19 Am. R. 706); and, in that case, the only point decided was that the memorandum of a sale of real estate must be free from uncertainty. We need hardly say that the rules of law applicable to the construction of a contract for the sale of real estate differ very widely from those which must control the courts, in construing and giving effect to the assignment or endorsement of a promissory note. In the case at bar, we have no difficulty in determining, from the contract of the appellants, what it was they were to stand good for. They sold and transferred to the appellee the note above described. Under the law applicable to their assignment of the note, it was necessary that the appellee, in order that he might have his action against the appellants as his assignors, should use due diligence against Creviston, the maker of the note. Due diligence would have required the appellee to bring suit against the maker of the note and prosecute him to insolvency, without delay, in order

that he might have. his action against the appellants, as the assignors of the note.    But the appellants, at the time of their assignment of the note and as a part of such assignment, virtually agreed with the appellee, that, for six months, without the use of due diligence against the maker of the note by the appellee, they would stand good to him for the amount of the note; or, in other words, that he need not sue the maker for six months, as, without such suit, they would stand good for the note, as the assignors thereof.

The court did not err, we think, in overruling the demurrer to the complaint.

2. The appellants' motion for a new trial ought to have been sustained.    The bill of exceptions fails to show that either the note or its endorsement was given in evidence. These items of evidence were necessary to sustain the finding of the court; and, in the absence of this evidence from the record, a new trial must be granted.

The judgment is reversed, with costs, and the cause is remanded for a new trial.